IN THE UNITES STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.      ) | CR. NO: 1:06CR91-WHA |
| ) | |
| DEXTER LAMOND SMITH  ) | |

### GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and makes this its *Trial Brief*:

1. On May 16, 2005, officials at Fort Rucker determined one of their computers accessed a web site containing malicious code. The subject computer accessed the web site on or about May 14 between 1:26 am and 3:09 am.

2. SFC Daniel Bateman and CW2 Stanley Turnage of Fort Rucker's Information Management section were assigned the task of locating the computer, and reformatting the hard drive of the computer in order to remove the malicious code.

3. Bateman and Turnage learned the site was accessed using the login and password of Leonard Dejesus. They learned Dejesus had left the country but had left has login and password enabled so that his co-workers could access their e-mail using the subject computer.  Before they found the subject computer, Bateman and Turnage disabled Dejesus's password so that the threatening website would not be accessed again.

4. On May 17, 2005, Sgt Confesi of Ft. Rucker's Army Fleet Support (AFS) came to Bateman and Turnage for help logging onto his computer. He told them that he did not use his own login and password.  Instead, he used Leonard Dejesus's.  Bateman and

Turnage suspected that this was the computer they were looking for, and went to its location to investigate.

5. Once Bateman and Turnage arrived at the computer, they looked at the internet history to verify this computer was the one accessing the malicious web site. They immediately noticed that someone had deleted the internet history for this computer. The only thing left was the "cookies."[1]

6. Bateman sorted the cookies by "last access" date. When Bateman did this, he found a list of sites accessed between 1:26 am and 3:09 am. The sites he found had names commonly associated with child pornography.

7. Bateman made a printout of the list of cookies, and informed his chain of command that he suspected that someone had been using the computer to access web sites that feature child pornography, and of his suspicion that the internet history had been erased to conceal their access to the illicit sites.

8. Bateman's chain of command was unsure if the sites contained child pornography, so they authorized him to retrieve deleted files from the internet cache to verify the presence of child pornography. Bateman did so, and recovered a number of images of child pornography.

9. The recovery program Bateman used changed the "dates created" "dates modified" and "dates last accessed" for each of the child porn images recovered. However, some of the retrieved images were labeled with the name of one of the child pornography web sites contained on the cookies print out for May 14 between 1:26 am and 3:09 am.

---

[1] A "cookie" is a small piece of data that certain Web sites attach to a user's hard drive while the user is browsing the Web site. Cookies typically contain the name of the web site that attached the data to the hard drive.

10. Major James Wideman at Fort Rucker turned the entire case over to Fort Rucker's Criminal Investigation Division (CID).  CID soon determined that, although 9 different people had access to the subject computer, only two regularly worked the night shift, and were also working during the time the child porn sites on the cookies print out were accessed. Those two employees were Korento Leverette and the Defendant.

11. CID agents Crystal Stokes and Ruth Pevear interviewed Leverette and the defendant. Leverette knew nothing about the computer being used to access child porn. However, the defendant immediately confessed to accessing child porn sites at work, and receiving e-mail from his friends that contained links to child porn web sites.[2]

12. The defendant admitted that he intentionally accessed child porn sites five to six times a night, every couple of days.  He stated that he looked at child pornography only at work.

13. Fort Rucker CID submitted the subject computer for a forensic examination. The examiner found approximately 30 images of child pornography on the computer's hard drive. Some of the images the examiner found were those recovered by Bateman, and had the altered dates of May 19, 2005.  This is the date that Bateman recovered the images.

14. Other images found by the examiner had their original dates intact.  These dates and times were consistent with the dates and times that the Defendant worked at Ft Rucker, when only he and Korento Leverette had access to the computer.

15. The images discovered during the examination depict children the same age and participating in the same activities that the defendant described in his confession.

16. Each time the defendant looked at child pornography, the image was copied to the internet cache on his computer. He possessed the image in the same way he would

---

[2] The Defendant later changed his story to say that he did not know who sent him the links to child pornography.

    possess any other image viewable on his computer screen, and would have the ability to exercise dominion and control over the image as he would any type of data file.[3]

17. Each time an image appeared on the defendant's screen, he had the power to copy it, to e-mail it, to alter it, print it, or delete it. Many of these images were, in fact, recovered from the computer's deleted files.

18. The defendant's confessions clearly established that he intentionally sought to view images of child pornography on a number of occasions from the Fort Rucker computer. Each time he accessed and viewed the images, he intentionally possessed child pornography.[4]

19. In order to possess this child pornography, he had to access, or receive it. In other words, his possession conclusively shows that he received it. [5]

20. Although other people had access to this computer, none of them have indicated that they accessed child porn from this computer. There is no evidence to suggest that anyone else did as the defendant admitted.

21. Even if other people were also accessing child porn from the computer, it would not negate the defendant's confession, the cookie printout showing access to web sites featuring child pornography, and the recovered images with the website's logo stamped across them.

---

[3] *See*, *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002). "[A]n individual could access an image in a cache file, attach it to an email, post it to a newsgroup, place it on a Web site, or print a hard copy." Id. "Just like as with any other data file, you could do almost anything with it." Id.

[4] "In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it." *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006). "While the images were displayed on Romm's screen and simultaneously stored on his laptop's hard drive, he had the ability to copy, print, or email the images to others. Thus the evidence of control was sufficient for the jury to find that Romm possessed and received the images in the cache." Id. See also *Tucker, supra*, holding that, in a child pornography context, the power and ability to exercise dominion and control over and image amounts to possession.

[5] While an individual may possess child pornography by manufacturing it as opposed to receiving it, there is no evidence to suggest that this defendant manufactured child pornography. His confession clearly states that he received links in his emails that connected him to web sites containing child pornography, and he visited these web sites with the intention of viewing the images.

22. The defendant's confession, standing alone, clearly establishes his guilt to both counts of the indictment. The remaining evidence merely corroborates this confession.

Respectfully submitted this 2nd day of October, 2006.

                                      LEURA G. CANARY
                                      UNITED STATES ATTORNEY

                                      /s/ K. David Cooke, Jr.
                                      K. DAVID COOKE, JR.
                                      Assistant United States Attorney
                                      Post Office Box 197
                                      Montgomery, Alabama 36101-0197
                                      334.223.7280
                                      334.223.7135 fax
                                      david.cooke@usdoj.gov

#### IN THE UNITES STATES DISTRICT COURT FOR THE
#### MIDDLE DISTRICT OF ALABAMA
#### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO: 1:06CR91-WHA |
| | ) | |
| DEXTER LAMOND SMITH | ) | |

#### CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jennifer Hart Esq., and Michael Petersen, Esq.

        Respectfully submitted,

        LEURA G. CANARY
        UNITED STATES ATTORNEY


        /s/ K. David Cooke, Jr.
        K. DAVID COOKE, JR.
        Assistant United States Attorney
        Post Office Box 197
        Montgomery, Alabama 36101-0197
        334.223.7280
        334.223.7135 fax
        david.cooke@usdoj.gov