IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 1:06cr91-WHA |
| ) | |
| DEXTER LAMOND SMITH ) | |

**DEFENDANT'S TRIAL BRIEF**

**COMES NOW** the Defendant, **DEXTER LAMOND SMITH**, by and through undersigned counsel, Jennifer A. Hart, and in response to the Court's Order dated September 13, 2006 and the telephone conference between the Court and Counsel for both parties on September 29, 2006, submits this brief in support of his position that the Government cannot prove, beyond a reasonable doubt, either of the Counts in the Indictment.

The Court ordered the Government to file a trial brief in this case by October 2, 2006 setting forth the elements of each charged offense and the evidence the Government believed establishes proof of those elements, as well as any other evidentiary issue which should be resolved prior to trial. Dexter Smith was ordered to respond by October 4, 2006.

On October 2, 2006, the Government filed its Trial Brief. However, it does not address any of the concerns raised by the Court in the telephone conference held with both parties on September 29, 2006. Since the Government's trial brief is merely a recitation of the facts it believes it can prove at trial, Dexter Smith cannot respond to the Government's Brief. Instead, Mr. Smith will attempt to address the matters of concern raised by the Court to support his position that the Government's case against Mr. Smith suffers from severe evidentiary deficiencies.

1

Dexter Smith would note, however, that he utterly disagrees with the Government's assertion in Paragraph 11 that Mr. Smith stated that he received e-mails from his friends that contained links to child porn cites and then later changed his story to say that he did not know who sent him the links to child porn. There is absolutely no documentation or evidence to support the assertion that Dexter Smith ever said any such thing. Such a statement is not included in his "confession" or in either the reports prepared by Special Agent Crystal Stokes or the report by the FBI case agent, Steven Zeringue. The Government informed Defense Counsel that Agent Ruth Pevear made this claim when he spoke with her on the phone two weeks ago. However, he then stated that Agent Stokes did not recall such a conversation. Such emails were requested by Defense Counsel. We were told no e-mail messages had been recovered.

This isn't the only false accusation made by the agents in this case. In an Investigative Report dated July 15, 2005, Agent Stokes falsely states that the Forensic report prepared by Government Expert Erwin Risher reflected that there were images of child pornography located on Mr. Smith's personal computer when, in fact, the Report states exactly the opposite; there were no images of child pornography found on Dexter Smith's computer. Then again, the Army's Investigative Summary prepared by Special Agent Crystal Stokes on August 11, 2005 falsely asserts that "several images [of child pornography] were discovered on [Mr. Smith's] personal computer.

In fact, not only was there no evidence of child pornography found on Mr. Smith's home computer, but the FBI had interviewed some of Mr. Smith's children and discovered that they had never been in any way abused. The Government did not produce this report until a Motion to Compel was filed by Dexter Smith.

**Facts and Procedural History**

On April 5, 2006, Dexter Lamond Smith was charged in a 2 count Indictment with offenses involving the receipt/possession of child pornography. Count 1 charges that Mr. Smith knowingly received images of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Count 2 charges that Mr. Smith possessed child pornography on a government computer, in violation of 18 U.S.C. § 2252A(a)(5)(A). If convicted of these offenses, Dexter Smith, the father of 9 children ages 6 months to 11 years, will receive a mandatory minimum sentence of at least 5 years.

In May of 2005, Dexter Smith was employed as a civilian employee in the Aviation Life Support Equipment (ALSE) Shop at Ft. Rucker, Alabama. On May 19, 2005, Major James Wideman, Headquarters Company Aviation Regiment, advised the Ft. Rucker Criminal Investigation Division (CID) that there was suspected child pornography located on a government computer. Major Wideman had received information from LTC Dowd that the Information Management Officer (IMO) Daniel Bateman, had discovered lewd pictures on a government computer

The investigation into the charges against Dexter Smith began on May 16, 2005 when Stanley Turnage received information from the Department of Information Management that a "malicious code" had been detected on a computer in his unit. Turner contacted Information Manager Officer (IMO) Daniel Bateman and informed him of the potential computer virus. Bateman was instructed to locate the computer and reformat it. Bateman, however, did not initially know which computer was suspected of having a virus.

Eventually, Bateman discovered that the computer in question was assigned to the Aviation Life Support Equipment Shop (ALSE) and was used by at least nine employees, both military and civilian. The Internet account used to access the lewd sites was assigned to SSG Leonard DeJesus

who, at that time of the examination, was in Pakistan. Nevertheless, Bateman, Turnage, and SSG Confresi went to ALSE to access the computer. Bateman searched the temporary internet directory to verify activity during the time in question. He discovered that all the files had been deleted and only the "cookies" remained. Bateman sorted the "cookies" by last access date and printed out a list.

According to Bateman, after advising his "chain of command" that some of the sites might contain child pornography, Bateman sought and was granted permission to recover and undelete the files contained in the Internet cache to verify whether the computer contained images of child pornography. Bateman attached a USB hard drive containing a program entitled "Recovery for All" to the computer and then scanned the hard drive for deleted files. Bateman described his examination as follows:

> I then executed the program from the USB drive and scanned the "C" drive for deleted files. I navigated through the directory tree and the program displayed. Starting with "C" drive, then documents and setting directories, then SSG DEJESUS directory, then to the local settings directory, then to the temporary internet directory, then to the content I.E.5 directory. Inside of the last directory were approximately 24 cache directories. I then opened each cache directory and recovered each file contained in those directories to the U.S.B. drive and subsequently numbered directories. I then opened one of the recovered directories and verified that there was what I believed child pornography.

Bateman also stated that he did a search for JPEG images and discovery approximately 3000 images. According to Bateman, 30 to 40 % of the images were "regular" pornography.

After Bateman's examination, Bateman, Turnage and Wideman took the computer hard drives and turned them over to CID. Eventually, the computer hard drives were sent to the Department of the Army Computer Media Examiner Erwin Risher for analysis. Mr. Risher was able

to recover approximately 40 photographs which appeared to be child pornography from the government computer.

There were nine employees in the ALSE who had regular access to the computer at issue. However, the Government believed that the pornographic websites were accessed on the night shift when only Korento Leverette and Dexter Smith were working. The Agents then interviewed Mr. Leverette, who said he knew nothing of the incident and never saw Dexter Smith access porn sites. Investigation by the Defense has revealed that Mr. Leverette was terminated from Ft. Rucker shortly after this incident for lying about his whereabouts and leaving his place of employment for hours.

In what the Government calls a confession, Dexter Smith made the following statement:

> I don't know what happened when I opened my email on collegeclub.com. I get mail from different people sending me mail. Some of the mail I open are links to different sites and they don't say anything in the mail. Some of them say open to see my page and when you open them some porn sites come up and I close them out when they come up. There are different ones that come up and say go here and when you open it they are porn sites of a child like one was lolitas.com and when you open it there are children but I try to close them and they keep coming up so I press control alt delete to close the page and a report to Microsoft comes up and I report the problem. I never really look on these sites when they come up. I thought I had a virus in my mail when the site pops up.

During questioning, Mr. Smith denied that he explored the pornographic websites or sent photos to anyone else, but he does admit that he viewed pornographic images. When later asked how often he clinks on such links, he states "5 - 6 times a night. But not every night every couple of days I check my mail." Mr. Smith is stating that he checked his e-mail 5 or 6 times a night, not that he visited child porn sites that frequently. In fact, the forensic analysis would not support such a claim even if that is what Dexter had intended to say.

The statement establishes nothing more than the fact that Dexter Smith had received e-mails that contained links to child porn images, he viewed some of them and immediately deleted them. Nothing in his statement establishes knowing receipt or possession of child pornography.

In fact, the government computer and Mr. Smith's home computer were sent to Army Forensic Computer Examiner Erwin Risher for analysis. No images of child pornography were discovered on Mr. Smith's home computer. Risher did, however, locate approximately 30 pictures of apparent child pornography on the government computer's internal hard drive and approximately 10 pictures of apparent child pornography on the government computer's external hard drive.

These suspect images were sent to the National Center for Missing and Exploited Children (NCMEC) for possible identification. NCMEC reported that 5 of the files appeared to contain child victims who have been identified by law enforcement. NCMEC, however, does not vouch for the information contained in its report. Instead, NCMEC states, " [t]he following does not constitute verification of the identity of the child. It is the responsibility of the investigator/prosecutor to contact the listed law enforcement agency for verification of image and age verification of the child." According to the discovery provided by the Government 3 of the images have been verified by law enforcement as depicting sexually explicit images of identified minors.[1]

---

[1] NCMEC identified some of the images as being associated with the series known as: Heather, Felisha, IM and Jan_Feb. The Government received correspondence verifying the victims in the Heather, IM and Jan_Feb series. There is no such documentation in regards to the Felisha series.

**Discussion**

The issue presented in this case is whether a defendant can be convicted of *knowingly* possessing child pornography simply because such images are automatically stored in his computer's cache after the defendant views the images on an Internet website, particularly when he has no knowledge that the images are being automatically stored. Only two circuits have addressed this issue, the Ninth and the Tenth. In each Circuit, the Court has upheld convictions for possession of child pornography where there was sufficient evidence, <u>in addition to</u> the fact that the images were automatically stored to the cache file, to demonstrate that the defendant intentionally sought out the images and knew the images were being automatically stored on his hard drive. In this case, no such evidence exists.

In 2001, the United States District Court for the District of Utah considered whether the defendant, Jeffrey Tucker, could be convicted of knowing possession of child pornography after his parole officer observed him viewing child porn websites during a search of his residence. *United States v. Tucker*, 150 F.Supp.2d 1263 (D. Utah 2001) ("Tucker 1"). Initially, the District Court noted that there were two issues presented in the case. First, whether Mr. Tucker had possession of the images and second, whether such possession was *knowingly*. *Id*. at. 1266.

Jeffrey Tucker was a convicted pedophile on parole for a state sex offense. Based on a tip about a possible parole violation, parole officers visited his home to conduct a search. Upon their arrival, the officers discovered Tucker's computer was displaying a child porn website. Confronted with this information, Tucker admitted that he had viewed hundreds of child porn images on his computer. *Id*. at 1264-65.

Evidence produced at trial showed that Tucker had a paid membership and personal password

to several internet newsgroups that gave him access to images of child pornography. Analysis of the computer revealed that Tucker visited these sites often and had viewed more than 5000 child porn images. *Id*. at 1265.

These images were automatically stored to Tucker's cache file and Tucker admitted that he intentionally deleted his cache file on the same day the officers searched his home, because it was "something he always did." However, Tucker had saved at least one image to his computer's c-drive and had attempted to save over 200 more onto a floppy disk using the computer's a-drive. *Id.* at 1265.

As to the issue of possession, the District Court noted that to posses something means to exercise authority, dominion or control over it, and that constructive possession requires a showing that the defendant "knowingly h[e]ld the power and ability to exercise dominion and control over it." *Id*. at 1267 (citation omitted). Tucker had possession, the Court reasoned, because when he viewed the images on his monitor he could keep them for as long as he liked, manipulate and enlarge them, copy and print them and show them to others. Furthermore, his possession was evidenced by the fact that he took the time to delete the images from the computer cache. *Id*. at 1267.

The Court then went on to discuss the wholly separate issue of whether Tucker *knowingly* possessed the pornographic images. *Knowingly*, the Court held, "means that the defendant was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident." *Id.* at 1269 (citation omitted). Importantly, the Court agreed with Tucker that absent knowledge that he was maintaining pornographic images on his computer his mental state was innocent. *Id.* However, this was not the case here. Tucker's possession was "knowingly" because he paid a user fee to access the sites and

had his own password to enter them. Additionally, he admitted he knowingly visited pornographic websites and manipulated the images, and that he knew the images were stored on his computer. Based on all of these facts, the Court held that Tucker knowingly possessed child pornography and affirmed his conviction. *Id*. at 1269.

In 2002, Tucker's conviction was affirmed by the 10th Circuit Court of Appeals. *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002) ("Tucker 2"). Of significance, the Court noted that approximately 27,000 images had been recovered from Tucker's computer, over 90% of which were child pornography. *Id*. at 1297. Furthermore, the Court found that there was evidence that Tucker accessed the cache files and manually deleted the images by placing them in his computer's recycle bin, and that he repeatedly visited the same child porn websites. *Id*. at 1198.

As to the "possession" element of the offense, the Tenth Circuit rejected Tucker's argument that he merely viewed the images of child pornography, but did not possess them. Tucker reasoned that, although he knew the images would be automatically saved to his cache file, he did not desire this to be so and thus deleted the images after each internet session. The Court found this argument to be without merit. *Id*. at 1204.

Agreeing with the District Court, the Tenth Circuit rejected Tucker's argument that, because he did not personally save or download the images, he had no control over them and thus lacked possession. The Court reasoned that Tucker's ability to access the images in the cache file, copy them, view them and e-mail them, conclusively established Tucker's control of the images in his cache file. The fact that Tucker may not have wanted his Web browser to automatically cache the images was irrelevant because he knew it was doing so. *Id*. at 1204-05.

As to the "knowing" element of the offense, the Court stated only that, because Tucker "knew

9

his browser cached the image files, each time he intentionally sought out and viewed child pornography with his Web browser he knowingly acquired and possessed the images." *Id*. at 1205. However, in a footnote, the Court pointed out that it was not offering its opinion as to whether the mere viewing of child pornography on the Internet, absent caching or in the absence of any knowledge by the defendant that the images were being cached, would meet the definition of possession or support such a conviction. *Id.* n.16. This question was not answered in the Court's next case concerning the same issue.

In *United States v. Bass*, 411 F.3d 1198 (10th Cir. 2005), the Tenth Circuit upheld a conviction for possession of child pornography holding that the Government presented sufficient evidence to establish that the Defendant was aware that child pornography was saved in his computer because he had utilized two software programs to try to remove the images. *Id*. at 1202.  Bass was a member of an e-group entitled "Candyman" an Internet service that enabled him to collect and distribute child pornography with others. *Id.* at 1200, n.1. In interviews with the FBI, Bass admitted that he viewed the images, but denied that he intentionally saved or downloaded the images to his computer. *Id*.

After over 2000 images were recovered from the computer, Bass admitted to using two types of computer software, "Window Washer" and "History Kill," to remove the images from the computer so that his mother, with whom he lived, would not discover the images. *Id*. at 1200-01. However, he denied knowing that the computer was automatically saving the images that he viewed. *Id*. at 1201.

At issue was "whether there was sufficient evidence presented for the jury to conclude beyond a reasonable doubt that Bass *knowingly* possessed the pornographic images which were

found on the computer hard drive." *Id*. The Court answered that questioned in the affirmative. It reasoned that the jury could infer that Bass knew the images were automatically saved to his computer based on the fact that he had attempted to remove the images from the computer because he did not want his mother to see them. *Id*. at 1202.

What the Tenth Circuit has clearly established is that, in order to support a conviction for knowingly possessing or receiving child pornography, the Government must prove that the defendant possessed (or received) the pornography <u>and</u> that such possession (or receipt) was knowingly. In discussions regarding this case with the Court, the Government continually argues that Dexter Smith had possession of the images because he could exercise dominion and control over them. Even if true, that fact would not, standing alone, support a conviction. The Government must prove that Dexter Smith knowingly possessed the images. That is, because the images were recovered from deleted files, the Government must prove that Dexter Smith knew that the images were automatically saved to his cache file and knew that he could access them by accessing the cache. There is no proof of that in this case. Dexter Smith does not even know what a cache file is.

In *United States v. Romm*, 455 F.3d 990 (9th Cir. 2006), the Ninth Circuit squarely addressed the issue of what evidence is sufficient to convict a defendant of knowingly receiving and possessing child pornography. *Id*. at 993. Following a trial, Stuart Romm was convicted of both receiving and possessing child pornography. On appeal, Romm argued that he could not be found guilty of either offense because he merely viewed child pornography without downloading it to his hard drive. *Id*.[2] Romm admitted he knowingly viewed child pornography but denied that he knowingly received it

---

[2] The Ninth Circuit had previously held that a defendant who downloads child pornography could be convicted of knowingly receiving and possessing it. See *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999).

or possessed it. The Court rejected this argument and affirmed Romm's conviction. *Id*. at 997-98.

The Court noted that "whether Romm 'received' the images in his cache depends on whether he knowingly took possession of them." Thus the issues were intertwined, and the Court first considered whether Romm had knowingly possessed child pornography. *Id*. at 998. Romm claimed he had not possessed the images because he had not downloaded them. Thus, the Court noted, the issue was "whether a defendant may be convicted of possessing and receiving images of child pornography found in the internet cache." *Id*. at 999. The Court held that in order to find that a defendant possessed the images in his cache, the Government must show, "at a minimum," that the defendant knew the unlawful images were stored on a disk or other tangible material in his possession. *Id*. at 1000.

The Court reasoned that, "given the indicia that Romm exercised control over the images in his cache, there was sufficient evidence for the jury to find that Romm committed the act of knowing possession." *Id*. at 1001. While Romm was in Las Vegas on business, he used his laptop computer to search for child pornography websites on the internet. When he found a picture he liked, Romm would view it for 5 minutes then delete it. During a week long stay in a hotel in Vegas, Romm spent approximately 6½ hours on the internet and twice masturbated while or shortly after viewing child pornography. *Id* at. 995. Forensic analysis of Romm's laptop uncovered a number of child porn images, the majority of which had been deleted from Romm's internet cache. The analysis also showed that Romm had enlarged a few of the smaller deleted images, and that Romm had deleted his internet history after being detained by law enforcement agents. *Id.*

The Court acknowledged that images of child pornography could be saved to a defendant's cache when he accidently views such images, but that was not the case here. Romm admitted that

he repeatedly sought out child porn images, saved the ones he liked, and sometimes masturbated while viewing them. Because of the significant amount of evidence that Romm exercised dominion and control over the images in his cache file, the Court upheld his conviction for possessing child pornography. *Id*. at 1000 - 01.   Likewise, because Romm knowingly possessed the images, "it follows that he also knowingly received them." *Id.* at 1001 The caching of files in this case was analogous to downloading files, therefore, when Romm took possession of the files in the cache, he knowingly received them.  Romm's conviction for receiving child pornography was also affirmed. *Id* at 1002.

**Conclusion**

The two Circuits which have addressed the issue presented in Dexter Smith's case have established that, in order to support a conviction for knowingly receiving and/or possessing images of child pornography that are recovered from a defendant's computer cache, the Government must, "at a minimum," prove that the defendant knew that the images were stored on a disk or in the internet cache.  In this case, there is absolutely no evidence to support suck a conclusion.

At best, the evidence shows that the illicit sites were accessed on a particular day and deleted on that same day.  There is no evidence that the images were downloaded, enlarged, e-mailed, manipulated or saved to a disk.  In short, there is no evidence of knowing possession or receipt in this case.

As previously mentioned. Dexter Smith has 9 children.  Under Alabama law, if convicted of these offenses, it is doubtful he will ever be able to live with them again or visit them without supervision.  He will serve a minimum of 5 years and will be on lifetime supervision.  The evidence

in this case is extraordinarily weak and because so, it is improper for the Government to go forward with this prosecution. The Court should take note of the fact that, when asked to do so by the Court, the Government failed to assert how it could prove each of the elements of the charged offenses. Accordingly, the Court should dismiss the Indictment against Dexter Smith, with prejudice, and send him home to his family.

    Dated this 4th day of October 2006.

    Respectfully submitted,

    s/Jennifer A. Hart
**JENNIFER A. HART**
FEDERAL DEFENDERS
MIDDLE DISTRICT OF ALABAMA
201 Monroe Street, Suite 407
Montgomery, AL 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
jennifer_hart@fd.org
AL Bar Code: HAR189

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 4, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David Cooke.

      Respectfully submitted,

      s/Jennifer A. Hart
      **JENNIFER A. HART**
      FEDERAL DEFENDERS
      MIDDLE DISTRICT OF ALABAMA
      201 Monroe Street, Suite 407
      Montgomery, AL 36104
      Phone: (334) 834-2099
      Fax: (334) 834-0353
      jennifer_hart@fd.org
      AL Bar Code: HAR189