IN THE UNITES STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CR. NO: 1:06CR91-WHA |
| | ) | |
| DEXTER LAMOND SMITH | ) | |

**GOVERNMENT'S AMENDED TRIAL BRIEF**

COMES NOW the Government and hereby makes this its *Amended Trial Brief*. In support thereof, the Government offers the following:

**Facts:**

On Monday, May 16, 2005, officials at Fort Rucker Army Base learned that someone at the base had used one of their computers to access a web site containing malicious code[1] on or about May 14, 2005, between 1:26 am and 3:09 am. Their Directorate of Information Management ordered the Information Officers (IO's) to find the computer involved, and reformat the hard drive.

IO Daniel Bateman located the subject computer, and searched the temporary internet directory to verify activity between the times in question. Bateman discovered that someone had deleted the internet history, with the exception of the "cookies."[2] Bateman then sorted the cookies by last access date, and located the times in question. He then printed a list of all the tracking cookies. Viewing the list, Bateman noticed that the names of the web sites on the

---

[1] The exact nature of the malicious code is unknown; although typical threats could involve implanted software, a chunk of data, or sequence of commands that seek to take advantage of a computer system.

[2] A small piece of data that certain web sites attach to a user's hard drive while the user is browsing the web site. Cookies typically contain the name of the web site that attached the data to the hard drive.

cookies list were indicative of web sites relating to child pornography. He notified his chain of command, LTC Dowd, of this development. Dowd advised he would consider notifying the Criminal Investigative Division (CID).

The next day, Dowd advised Bateman that he did not believe there was enough evidence to notify (CID). Bateman then offered to recover some of the deleted temporary internet files, in order to determine if there was any child pornography in those files, and received the order to proceed.

Bateman recovered a number of deleted files which contained child pornography. Specifically, these files contained images of children who were obviously under the age of 18. Each child depicted is engaged in some type of sexual contact, or a lascivious display of the genitals, or both. Once Bateman advised his superiors of this find, the computer and hard drive were secured and submitted to CID.

CID soon determined that, although 9 different individuals had access to the subject computer, only two employees had access to the computer during the time the child porn sites on the cookies list were accessed. Those two employees were Korento Leverette and the defendant. CID agents Crystal Stokes and Ruth Pevear interviewed Leverette and the defendant. Leverette knew nothing about the computer being used to access child pornography. However, the defendant immediately confessed to accessing child porn sites at work from the subject computer. He gave the agents a verbal statement, and a written one immediately thereafter.

The defendant told agents Stokes and Pevear that he received e-mails from friends that contained links to child porn web sites.[3] In his written statement, the defendant described the images as "child porn pictures" depicting children "the size of my six-year-old son and nine-year-old daughter." He also stated that "the children were having sex on some of the sites." When asked why he chose to view the images, he responded "to see what people get out of doing this to children. Intrigued I was."

After taking the defendant's statement, CID submitted the subject computer for a forensic evaluation. The examiner, Erwin Risher, found over 10 images of children posed in a lewd or lascivious in the temporary internet files of the computer. The files for these images were all created between 2:07 am and 2:18 am on May 14, 2005. In addition to portraying children in lewd and lascivious poses, some of the images depict penile-vaginal and penile-oral sex between children and adults. Just as the defendant described in his statement, many of the children appear to be the size of a six-year-old or nine-year-old child. Some of the images are a part of web "banners" or advertisements that offer free videos or photos of "lolitas."

In the "recovered" folders for the computers hard drive, Risher found over 30 images of children posed in a lewd or lascivious manner and/or engaged in sexual activity. Just as the defendant described, many of these images also depict children between the ages of six and nine years old. Some of the children performing sex acts appear to be of pre-school age. According to Risher, these files appear to have been deleted at some point, and then recovered by Bateman through the use of a recovery program. Because the program automatically changes the "file

---

[3] The defendant later changed his story to say that he did not know who sent him the links to child pornography.

created", "file last modified" and "file last accessed" dates for each recovered file, it is unknown exactly what date each of these images was accessed. However, many of these images bear the name of the Web site "underground love." According to the cookie printout Bateman made, as well as the computer's internet history, the subject computer visited this Web site at 2:17 am on May 14, 2005. Risher also located two other images of suspected child pornography in the "unallocated space" of the subject computer. Because these images were located in the unallocated space, they were necessarily erased prior to their discovery, and they have no stated date of creation, modification, or last access. Finally, Risher found approximately 10 other deleted images of child pornography in the temporary internet files of the subject computer. All of these images were first accessed between 2:07 am and 2:18 am on May 14, 2005. Some of them also contain the name of the website "underground love."

A federal grand jury subsequently indicted Smith for violation of Title 18, United States Code, Sections 2252(a)(2), Receiving Material Involving the Sexual Exploitation of Minors, and 2252A(a)(5)(A), Possession of Child Pornography Within the Special Maritime and Territorial Jurisdiction of the United States.

## Discussion

The Court has asked the parties to discuss how the facts, as they expect them to be presented at trial, will or will not prove the essential elements of each crime charged. The government will discuss the elements of each offense and how it expects them to be proved below.

**I. Title 18 United States Code Section 2252A(a)(5)(A)**

To find the defendant guilty of 18 USC § 2252A(a)(5)(A), the government must prove the

following: 1) That the Defendant knowingly possessed an item or items of child pornography as charged; 2) That such possession took place within the special maritime and territorial jurisdiction of the United States, as charged; and 3) That at the time of such possession, the defendant believed that such items constituted or contained child pornography.  *See*, 18 USC § 2252A(a)(5)(A).

**a. The possession took place within the special maritime or territorial jurisdiction of the United States.**

Because it is undisputed that these events took place at Fort Rucker Army Base, the government does not expect this issue to be a factor in the trial.

**b. The defendant believed, at the time of possession, that the images constituted child pornography, as defined by the statute.**

According to the statute, "child pornography" means any visual depiction including any photograph, film, video, picture, or computer or computer generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.  Sexually explicit conduct includes actual or simulated sex acts or a lascivious exhibition of the genitals or pubic area of another person.

The subject photos depict many children who clearly appear to be under the age of ten [4] engaged in a number of sex acts with adults. In his written statement, the defendant described the images as "child porn pictures" depicting children "the size of my six-year-old son and nine-year-old daughter."  He also stated that "the children were having sex on some of the sites."  Based on

---

[4]The statute only requires that the minor child be under the age of eighteen years old.

the content of the images, and the defendant's own description of the images, the government does not expect this element to be an issue at trial.

**c. The defendant knowingly possessed an item or items of child pornography, as charged.**

**1. The defendant possessed the subject items of child pornography**

In his written statement, the defendant admitted that he knowingly and intentionally clicked on links that would take him to "child porn sites", and that he would sometimes click on the link "5-6 times a night." "In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it." *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006). When the defendant Smith sought out and viewed the subject images on a computer screen, the images were automatically sent to the computer's browser cache and saved to its hard drive. While the defendant looked at the images on his computer screen, he had the ability to copy, print, or email the images to others. Just like with any other data file, he could also post the images to a newsgroup or website, or he could delete the image to prevent other users from discovering his activities. *See, Romm, supra*, and *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002).

Furthermore, there is no requirement that child pornography be stored data. *See, United States v. Tucker*, 305 F.3d 1193, 1204. For purposes of the two crimes charged, "child pornography" is defined by Title 18 USC 2256 (8), which states, in part:

> "'child pornography' means *any* visual depiction, including *any* photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct..."(emphasis

added).

Although the defendant may properly be charged and convicted for the images saved and subsequently deleted from the computer's internet cache, the cached images are also evidence of the images that the defendant possessed on the computer screen. Simply stated, the identical images that simultaneously appeared on the computer screen also constitute "child pornography" under the statute, as they are a visual depiction of children engaged in sexual activity. Since the defendant had the ability to print the images on his screen, and to alter, copy, save, or destroy them just as he did the identical images in the internet cache, he held the images on the screen in his possession as well. *See,* "Don't Cache out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files", *19 Berkley Tech. L.J. 1227, 1264-1268* (2004).

### 2. The defendant's possession was a "knowing" possession

"Possession is defined as "the holding or having something (material or immaterial) as one's own, or in one's control." *Tucker, supra, at* 1204. In the present case, the defendant knew he could find child pornography at certain web sites, and he knew he had the power to view it and enjoy it just as if he had walked into a store and taken it off the shelf, and held it in his hands. He intentionally went to the subject web sites, and the images appeared on his screen, just as he knew they would. In short, he possessed the images because he knew of the presence of the child pornography on his computer screen, and he had control over it. *See, 19 Berkley Tech. L.J. 1227*, *at 1265-1266,* likening the possession of child pornography by viewing on the computer screen to browsing through child pornographic magazines in a bookstore.

In addition to the images the defendant possessed on the screen, there are also the numerous deleted images Risher discovered in his forensic examination of the computer and its hard drive. Both the internet history and the images of child pornography were deleted when Bateman discovered the computer on May 19, 2005. The deletion of the images, and the internet history, indicate that someone knew of the existence of the contraband and sought to destroy the evidence of it. Because the defendant is the only person who knew of the images, and had a reason to destroy them, the attempts to destroy and hide the evidence demonstrate the defendant's knowledge of their existence, and therefore, his knowing possession.

## II. Title 18 United States Code Section 2252(a)(2)

To find the defendant guilty under 18 USC § 2252(a)(2), the government must prove the following: 1) That the defendant knowingly received a visual depiction; 2) that such visual depiction was shipped or transported in interstate or foreign commerce by any means including computer; 3) that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; 4) that such visual depiction is of a minor engaged in sexually explicit conduct; and 5) that the defendant knew that at least one of the performers in such visual depiction was a minor and knew that the depiction was of such minor engaged in sexually explicit conduct.

### a. The defendant knowingly received a visual depiction.

As stated in the government's possession analysis above, "[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it." *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006). In order for the defendant to possess child pornography in the manner he described,

he had to first receive it. The defendant's acquisition of the pornographic images necessarily involved a receipt of them.

**b. The visual depiction was shipped in interstate or foreign commerce by any means including computer.**

"The internet is an instrumentality of interstate commerce." *United States v. Walters*, 2006 WL 1490136 (11th Cir. 2006); (quoting *United States v. Hornandy*, 392 F.3d 1306, 1311 (11th Cir. 2004)). Because all of these images were obtained via the internet, they moved as a part of interstate or foreign commerce.

**c. The production of such visual depiction involved the use of a minor engaged in sexually explicit conduct.**

This element is addressed and discussed in section "I" part "b" above**.**

**d. Such visual depiction is of a minor engaged in sexually explicit conduct.**

This element is addressed and discussed in section "I" part "b" above**.**

**e. The defendant knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.**

This element is addressed and discussed in section "I" part "b" above**.**

## CONCLUSION

Based on the forgoing, the government expects to prove each material element of the offenses beyond a reasonable doubt, and, at the conclusion of the evidence, will ask the jury to return a verdict of guilty as to each count.

Respectfully submitted this 17th day of October, 2006.

                                                LEURA G. CANARY
                                                UNITED STATES ATTORNEY

                                                /s/K. David Cooke, Jr.
                                                K. DAVID COOKE, JR.
                                                Assistant United States Attorney
                                                Post Office Box 197
                                                Montgomery, Alabama 36101-0197
                                                Telephone: 334.223.7280
                                                FAX: 334.223.7135
                                                E-mail: david.cooke@usdoj.gov

IN THE UNITES STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CR. NO: 1:06CR91-WHA |
| | ) | |
| DEXTER LAMOND SMITH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jennifer Hart, Esq., and Michael Peterson, Esq.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ K. David Cooke, Jr.
K. DAVID COOKE, JR.
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
Telephone: 334.223.7280
FAX: 334.223.7135
E-mail: david.cooke@usdoj.gov